UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NARCRISSUS SWANIGAN,

                    Plaintiff,          NO. CV-11-5073-EFS

          v.

DAVID BAILEY, RONALD                    **ORDER GRANTING DEFENDANTS'**
THOMPSON, JONI GONZALES,                **MOTION FOR SUMMARY JUDGMENT,**
CINDE GARLAND, and CRYSTAL              **AND CLOSING FILE**
DECOURSEY, sued in both their
individual and official
capacities,

                    Defendants.

     Before the Court, without oral argument, is Defendants David Bailey,

Ronald Thompson, Joni Gonzales, Cindi Garland, and Crystal DeCoursey's

Motion for Summary Judgment Pursuant to FRCP 56, which asks the Court to

dismiss all of Plaintiff Narcrissus Swanigan's claims.  ECF No. 78.  Mr.

Swanigan opposes Defendants' motion, contending there are triable issues

of fact.  After reviewing the filings and relevant authority, the Court

is fully informed.  For the reasons given below, the Court grants

Defendants' summary-judgment motion.

///

//

/

ORDER * 1

**A.   Background**[1]

Mr. Swanigan has been an inmate at Washington's Coyote Ridge Corrections Center (CRCC) since February 19, 2009.  Defs. Stmt. of Mat. Facts Ex. 1 ¶ 4, ECF No. 80.  Shortly after being housed at CRCC, Mr. Swanigan began working as a janitor at the CRCC Education Building.  He received a monthly payment of $55.00 for his work.  Swanigan Decl. Ex. 6, ECF No. 85.  Given his good conduct, including employment and participation in classes, 155 hours of Mr. Swanigan's good conduct time was restored on June 22, 2010.  Swanigan Decl. ¶ 1, ECF No. 85.

Mr. Swanigan's performance in school and work was interrupted shortly thereafter.  While attending a CRCC class on June 22, 2010, the teacher, Crystal DeCoursey, made racist statements. *Id*. ¶ 4.  On July 2, 2010, Mr. Swanigan contacted his CRCC Classification Counselor Joni Gonzales to complain about Ms. DeCoursey's racist statements and that the prison officers did not let him return to class after he left class to go to the library.[2] *Id*. ¶¶ 5-8;  Defs. Stmt. of Mat. Facts, Ex. 2 ¶ 1,

---

[1]   When considering this motion and creating this factual section, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[2]   Ms. Gonzales was Mr. Swanigan's counselor from May 19, 2010, to

ORDER * 2

ECF No. 80.  Ms. Gonzalez discussed these issues with Mr. Swanigan; Ms. Gonzalez did not report Ms. DeCoursey's racist statements to CRCC staff or management at that time.  Swanigan Decl. ¶¶ 5-8, Ex. 2, & Ex. 17 at 7:11-16, ECF No. 85; Defs. Stmt. of Mat. Facts, Ex. 2 ¶ 3, ECF No. 80.

Also on July 2, 2010, Mr. Swanigan wrote a letter to CRCC Associate Superintendent David Bailey, discussing his concerns regarding the prison officials' conduct and Ms. DeCoursey's racist statements.  Swanigan Decl. ¶ 10, ECF No. 85; Defs. Stmt. of Mat. Facts, Ex. 1 ¶ 2, ECF No. 80.  In pertinent part, the letter states that Mr. Swanigan "had a teacher tell me I had to accept her hitlerish [sic] ways to obtain a [sic] education." ECF No. 91 Ex. 4.

On July 6, 2010, Mr. Swanigan tried to meet with Ms. Gonzales at her office in the CRCC Education Building.  Swanigan Decl. ¶ 14, ECF No. 85. While en route, Mr. Swanigan came in contact with one of his teachers, Cindi Garland.  *Id*.  What transpired during this encounter between Mr. Swanigan and Ms. Garland is contested.  Mr. Swanigan contends that, when he elected not to speak with Ms. Garland without witnessing staff, she became angry.  *Id*. ¶ 15.  Ms. Garland contends that Mr. Swanigan utilized negative and abusive language and talked rudely about Ms. DeCoursey during their conversation and, as a result, Ms. Garland discontinued the conversation.  Defs. Stmt. of Mat. Facts, Ex. 4 ¶ 5, ECF No. 80.  On July 9, 2010, Ms. Garland wrote a General Infraction Report ("Infraction") against Mr. Swanigan, stating:

> On 7/6/10 at approximately 1:15 Offender Narcrissus Swanigan
> . . . knocked on the education door upset with one of our

March 11, 2001.

ORDER * 3

instructors (Ms. Decoursey) and was going off about her being a Nazi and how he doesn't have to take her class and how he dropped all his classes because he doesn't have to put up with education programs here.  He continued to talk in a rude manner about the instructor and I finally stopped the behavior.  Mr. Swanigan not only has taken classes in the education building but is a porter in the education department and has been talked to numerous times about his language/rudeness toward the staff. Swanigan was talked to by the education officer due to his behavior and was terminated from his job due to non support in the education building and rude behavior toward the education staff.

Defs. Stmt. of Mat. Facts Ex. 4, ¶ 5 & Attach. A, ECF No. 80.[3]

Ms. Garland's termination of Mr. Swanigan's employment as a janitor in the CRCC Education Building became effective July 7, 2010; Mr. Swanigan received $10.08 for his July work.  Defs. Stmt. of Mat. Facts, Ex. 3 ¶ 8, ECF No. 80; Swanigan Decl. Ex. 6 ¶ 2, ECF No. 85.

On July 21, 2010, Associate Superintendent Bailey wrote Ms. Gonzales a note regarding the letter that Mr. Swanigan had written to him on July 2, 2010.  Later that day, Ms. Gonzales responded via email to Mr. Bailey, advising that she would ensure that Mr. Swanigan's noted concerns were being addressed.  Swanigan Decl. Ex. 6 ¶ 5, ECF No. 85.

---

[3]  Mr. Swanigan disputes Ms. Garland's statements contained in the Infraction, including that he had been previously warned about his work behavior.  Swanigan Decl. ¶ 12, ECF No. 85.  In contrast, Ms. Garland and Ms. Gonzales stated at their depositions that Mr. Swanigan had been previously orally warned about his tone and language toward Education staff.  Swanigan Decl. Ex. 15, ECF No. 85; Defs. Stmt. of Mat. Facts, Ex. 1 ¶ 6, ECF No. 80.

ORDER * 4

Also, on July 21, 2010, the Grievance Coordinator received an Offender Complaint ("July Offender Complaint") from Mr. Swanigan that stated:

> I WANT TO GRIEVE:  for the past several months a teacher by the name [sic] Garland has been attempting to set up rivals with me and other prisons.  Garland has brought another teacher into this harassment of me by the name of DeCoursey.  Racial comments was made by DeCoursey towards me.  I attempted to have the administration deal with this issue.  Instead, Garland resorted to liing [sic] on official documents.  Garland and DeCourseys [sic] actions along with their words is considered to be very explosive in an environment such as this. DeCourseys' statement caused racial tention [sic] in the class as well as outside of the class.  Garlands [sic] actions shows indictiveness, biased, unprofessionallism [sic] and a threat to every one around here.

Swanigan Decl. Ex. 7, ECF No. 85.  The date that Mr. Swanigan signed the July Offender Complaint is difficult to decipher: it reads "7 - 1 ' - 2010."  *Id*.  Mr. Swanigan states that he "filed" the July Offender Complaint on July 1, 2010.  Swanigan Decl. ¶ 13, ECF No. 85.  However, the July Offender Complaint states that it was received by the Grievance Coordinator on July 22, 2010, and references Ms. Garland's "official documents," i.e. the July 9, 2010-prepared Infraction.  Accordingly, the Court rejects Mr. Swanigan's assertion that he filed the July Offender Complaint on July 1, 2010, and accepts July 22, 2010, as the date it was accepted by the Grievance Coordinator.

On July 22, 2010, a hearing was held to address the July 9, 2010 Infraction regarding Mr. Swanigan's language toward Ms. Garland.  Defs. Stmt. of Mat. Facts, Ex. 3 ¶ 5, ECF No. 80.  Mr. Swanigan was found guilty of the alleged July 6, 2010 abusive and negative language and received a warning.  *Id*.; *id*. Ex. 4, Attach. A.  Mr. Swanigan was told he could appeal the Infraction decision, and that the portion of his July

ORDER * 5

Offender Complaint regarding Ms. Garland should be raised through the appeal. *Id.* ¶ 6; Swanigan Decl. Ex. 7, ECF No. 85.

Mr. Swanigan appealed the Infraction decision.  On July 29, 2010, Officer Scantlin granted Mr. Swanigan's appeal of the Infraction decision, finding, "The way the infraction reads I find no 102 or 202 WAC violation." Swanigan Decl. Ex. 10, ECF No. 85.  Although the Infraction was dismissed, Mr. Swanigan was not permitted to reapply for new employment until August 7, 2010, because his employment had been terminated. *Id.* Ex. 23.

In August 2010, Mr. Swanigan requested an Extended Family Visit (EFV) with his mother and brother. *Id.* Ex. 12. On August 13, 2010, Ms. Gonzales recommended that the requested EFV be denied because Mr. Swanigan did not meet the Custody Facility Plan's EFV programming requirements given that he was not attending class and was not working. *Id.* Exs. 12 & 19 ("The offender must be actively participating in his Individual Re-entry Plan, school or work assignment, or establish that a reasonable effort has been made to obtain a school or work assignment."); Defs. Stmt. of Mat. Facts, Ex. 2 ¶ 7, ECF No. 80.  On August 26, 2010, Mr. Bailey agreed with Ms. Gonzales' recommendation and denied the EFV.  Defs. Stmt. of Mat. Facts, Ex. 1, Attach. A, ECF No. 80.

On September 8, 2010, the Grievance Coordinator received an Offender Complaint ("September Offender Complaint") from Mr. Swanigan dated September 2, 2010, stating:

> On the 22nd of June 2010 a [sic] education instructor name [sic] Crystal DeCoursey told me I would have to put up with her "hitlerish Ways" to get a free education.  On the 24th of June

ORDER * 6

> 2010 Crystal DeCoursey (the same instructor) said she was going to make me her guinea pig. DOC policies 260.050, 800.010, and 830.180 was all violated by the education instructor DeCoursey. The statments [sic] that was made by DeCoursey was also professional misconduct, gross and repeated incompetence and negligence. This statment [sic] from the educational instructor DeCoursey caused me mental anguish and emotional discomfort which violated my 8th amendment civil rights as well as others.

Defs. Stmt. of Mat. Facts Ex. 3, Attach. A at 27, ECF No. 80. Correctional Unit Supervisor Ronald Thompson investigated the September Offender Complaint; however, Ms. DeCoursey was no longer working for CRCC, or the Washington Department of Corrections (DOC), at that time.[4] *Id.* Ex. 3, ¶ 7 & Attach. B. On October 20, 2010, Mr. Thompson determined the September Offender Complaint was unfounded as Mr. Swanigan failed to produce evidence or information to substantiate his claim of staff misconduct. *Id.*

Thereafter, Mr. Swanigan obtained a job at CRCC as a therapy aide and began taking classes again. On June 16, 2011, Mr. Swanigan's second application for an EFV was approved. *Id.* Ex. 1, Attach. B.

Meanwhile, on May 2, 2011, Mr. Swanigan filed this lawsuit. ECF No. 1. On June 8, 2012, Defendants filed this motion for summary judgment, ECF No. 78; briefing ensued.

**B.   Standard**

Summary judgment is appropriate if the record establishes "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing

---

[4]   Sometime during September 2010, Ms. DeCoursey ceased working for CRCC. ECF No. 80-1 Ex. 3 ¶ 7, & Attach. B.

ORDER * 7

summary judgment must point to specific facts establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the court must grant the summary judgment motion. *Celotex Corp.*, 477 U.S. at 322.

**C.   Authority and Analysis**

Defendants contend that summary judgment should be entered in their favor because 1) Mr. Swanigan failed to establish a triable issue of fact as to whether Defendants retaliated against him, 2) there is no cause of action under the Fourteenth Amendment for failing to protect a prisoner from retaliation, and 3) Defendants are entitled to qualified immunity. Mr. Swanigan opposes the motion, contending that he presented sufficient evidence to maintain his 42 U.S.C. § 1983 retaliation and failure-to-protect claims.

Section 1983 provides a cause of action against a person acting under color of state law who violated a right guaranteed by the U.S. Constitution or federal statutes.  42 U.S.C. § 1983[5]; *Buckley v. City of*

---

[5] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

ORDER * 8

*Redding*, 66 F.3d 188, 190 (9th Cir. 1995). Here, there is no disagreement that Defendants acted under color of state law. The focus is therefore on whether 1) Mr. Swanigan presented sufficient evidence that Defendants retaliated against him for engaging in First Amendment protected speech, and 2) a § 1983 claim may be based on Defendants' failure to protect Mr. Swanigan from due process violations. The Court addresses each of these questions.

    1.  <u>Retaliation</u>

To support his § 1983 claim for First Amendment retaliation, Mr. Swanigan must present evidence to establish a triable issue as to whether Defendants retaliated against him by engaging in adverse action because of his First Amendment protected conduct, thereby chilling his First Amendment rights. Mr. Swanigan must also demonstrate that Defendants' conduct was not undertaken to advance a legitimate penological purpose. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (setting forth elements for a § 1983 First Amendment retaliation claim). There is no dispute that Mr. Swanigan's informal complaint to Ms. Gonzalez on July 2, 2010, his July 2, 2010 letter to Superintendent Bailey, and his filing of the Offender Complaints constitute speech protected by the First Amendment, and the Court so finds because Mr. Swanigan complained to appropriate prison officials of inappropriate racial comments by a CRCC educator, a matter of public concern. *See Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) (finding that a prison officer's reported

--------------------------------

42 U.S.C. § 1983.

ORDER * 9

comments regarding the inmates' sexually-abusive behavior toward female officers were a matter of public concern). Defendants' primary argument is that Mr. Swanigan failed to present sufficient evidence to establish a triable issue of fact as to whether Defendants took an adverse action that chilled the exercise of Mr. Swanigan's First Amendment speech rights. The Court finds in Defendants' favor.

First, in regard to Mr. Swanigan's claim that Ms. Garland filed the Infraction against him because he filed Offender Complaints against her, the documentary evidence establishes that Ms. Garland's Infraction preceded Mr. Swanigan's July and September Offender Complaints. Accordingly, Mr. Swanigan cannot establish that Ms. Garland filed the Infraction because of his filing of Offender Complaints. And there is no evidence that any of the other Defendants were involved in the Infraction's filing. Defendants' motion is granted in this regard.

Second, in regard to Mr. Swanigan's claim that his employment was terminated in retaliation for his protected speech, the Court finds Mr. Swanigan failed to present sufficient evidence to establish a triable issue of fact as to whether Defendants terminated his employment because of his protected speech. As to Ms. Gonzales, there is no evidence that Ms. Gonzales took any adverse action against Mr. Swanigan based on Mr. Swanigan's protected July 2, 2010 speech to her: Ms. Gonzales was not involved in the decision to terminate Mr. Swanigan's employment. Likewise, as to Mr. Thompson and Ms. DeCoursey, there is no evidence that, prior to July 7, 2010, they possessed information regarding Mr. Swanigan's protected speech, or that they played any role in Ms. Garland's decision to terminate Mr. Swanigan's employment. As to

ORDER * 10

1  Assistant Superintendent Bailey, there is no evidence that he received
2  Mr. Swanigan's July 2, 2010-dated letter prior to July 7, 2010, or that
3  he had any role in Ms. Garland's decision to terminate Mr. Swanigan's
4  employment.   Finally, as to Ms. Garland, when the facts are viewed in
5  Mr. Swanigan's favor, the Court must accept that Mr. Swanigan elected not
6  to speak to Ms. Garland about Ms. DeCoursey without witnessing staff on
7  July 6, 2010.   Accordingly, given this accepted-as-true fact, there is
8  no basis to find that Mr. Swanigan's speech on July 6, 2010 was protected
9  speech.   And there is no evidence that Ms. Garland knew of Mr. Swanigan's
10 protected speech to Ms. Gonzales on July 2, 2010.   Accordingly, when
11 viewing the evidence in Mr. Swanigan's favor, there is no basis to find
12 that Ms. Garland was aware of any protected speech by Mr. Swanigan when
13 she terminated his employment.[6]   For these reasons, Defendants are

14

15        [6]  The Court notes, however, that Defendants' argument that Mr.
16 Swanigan was not terminated from him employment, but rather
17 administratively reassigned, is not persuasive.   There is no evidence
18 that Defendants took the steps required by the CRCC Operations'
19 Memorandum in order to administratively reassign Mr. Swanigan.   *See*
20 Swanigan Decl. Ex. 16, ECF No. 85.   For instance, Defendants did not
21 present any "termination documentation" that showed what work
22 expectations Mr. Swanigan was not meeting.   Nonetheless, the Court grants
23 Defendants' summary judgment in regard to Mr. Swanigan's claim that his
24 employment was terminated in retaliation for his protected speech because
25 there is no evidence that his employment was terminated because of such

ORDER * 11

granted summary judgment on Mr. Swanigan's § 1983 claim based on retaliatory termination of his employment.

Third, in regard to Mr. Swanigan's claim that he was denied EFV in retaliation for his protected July 2, 2010 speech and July Offender Complaint, the Court finds in Defendants' favor. Mr. Swanigan's EFV was denied in August 2010 because he was neither employed nor attending class. Based on the record before the Court, Ms. Gonzales and Assistant Superintendent Bailey appropriately denied the EFV on these grounds because 1) there is no evidence that Mr. Swanigan was prohibited from participating in class, rather he chose not to participate in class, and 2) Ms. Garland terminated his employment without knowing of his protected speech. Mr. Swanigan appears to argue that Defendants effectively precluded him from participating in class because he was subject to racist comments. However, the evidence shows that CRCC personnel and management were taking steps to address Mr. Swanigan's July 2, 2010 letter to Superintendent Bailey and his July and September Offender Complaints. Accordingly, the decision to not participate in class was Mr. Swanigan's decision. Therefore, Ms. Gonzales' initial August 13, 2010 EFV denial and Superintendent Bailey's final August 26, 2010 EFV denial were not in retaliation for Mr. Swanigan's protected speech but rather based on legitimate penological EFV requirements.

In summary, the Court grants summary judgment in Defendants' favor as to Mr. Swanigan's § 1983 retaliation claims.

///

_____

protected speech.

1           2.   <u>Failure to Protect</u>

2        Mr. Swanigan alleges that Assistant Superintendent Bailey, Mr.

3   Thompson, and Ms. Gonzales failed to protect him from the retaliatory

4   disciplinary action, denial of EFV, and termination of his employment.

5   Mr. Swanigan asserts this failure-to-protect claim under the Fourteenth

6   Amendment.   Defendants argue that a failure-to-protect claim does not

7   exist under the Fourteenth Amendment but rather under the Eighth

8   Amendment.

9        Defendants correctly identify that the Eighth Amendment imposes a

10  duty on prison staff to protect an inmate from deliberate indifference

11  to the inmate's health or safety, and that there is no allegation that

12  Mr. Swanigan's health or safety was harmed.   *See Farmer v. Brennan*, 511

13  U.S. 825, 834 (1994).   Yet, although a 42 U.S.C. § 1983 claim may not

14  typically be based on a state actor's failure to protect an individual

15  from third parties, a plaintiff can bring a § 1983 Fourteenth Amendment

16  failure-to-protect-from-harm-to-health-or-safety claim if a special

17  relationship exists between the plaintiff and the state (the special-

18  relationship exception), or when the state affirmatively places the

19  plaintiff in danger by acting with deliberate indifference to a known or

20  obvious danger (the state-created danger exception).   *Patel v. Kent Sch.*

21  *Dist.*, 648 F.3d 965, 971-72 (9th Cir. 2011).

22       Here, there are no facts to apply the state-created danger

23  exception.   However, there is a special-relationship that exists between

24  Mr. Swanigan and the State.   *See DeShaney v. Winnebago Cnty. Dep't of*

25  *Soc. Servs.*, 489 U.S. 189, 199-200 (1989) (recognizing that a special-

26  relationship exists between the State and an inmate).   However, the

ORDER * 13

rationale for the special-relationship exception, to the general rule that the Fourteenth Amendment's due process clause does not support a failure-to-protect claim, is to ensure that the State meets its responsibility to protect an inmate's safety and general well-being. *Id.* at 199-200.   There is no case law to support extending the special-relationship exception to permit an inmate to bring a § 1983 failure-to-protect claim against a State actor for failing to take steps to ensure that the inmate receives full due process before being deprived of his prison employment, EFV, and other programming benefits.  Accordingly, the Court concludes that Mr. Swanigan has not stated a § 1983 claim for failure to protect under the Fourteenth Amendment's Due Process Clause. Defendants' motion is granted in this regard.

**D.   Conclusion**

Because the Court finds Defendants are entitled to summary judgment on Mr. Swanigan's § 1983 claims, the Court need not address Defendants' qualified-immunity arguments.   Accordingly, **IT IS HEREBY ORDERED**:

1.   Defendants' Motion for Summary Judgment Pursuant to FRCP 56, **ECF No. 78**, is **GRANTED.**

2.   Judgment shall be entered in Defendants' favor.

3.   This file shall be **CLOSED.**

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and to furnish copies to Mr. Swanigan and counsel.

**DATED** this ___7th___ day of November 2012.


_____
S/ Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2011\5073.msj.lc1.wpd

ORDER * 14